IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| PAUL J.M. KAWIMBE,<br><br>    Plaintiff,<br><br>           v.<br><br>THE AFRICAN METHODIST EPISCOPAL CHURCH, INC.,<br><br>    Defendant. | Civil Action No.<br>1:20-cv-04711-SDG |

## OPINION AND ORDER

This matter is before the Court on Defendant the African Methodist Episcopal Church, Inc.'s (the Church) motion to dismiss [ECF 11] and Plaintiff Bishop Paul J.M. Kawimbe's motion to amend the complaint [ECF 20]. After careful consideration of the parties' briefing, and with the benefit of oral argument, the Court **GRANTS** the Church's motion to dismiss and **DENIES as moot** Kawimbe's unopposed motion to amend the complaint.

I.    BACKGROUND

The Court accepts the following facts as true for purposes of this motion.[1] Plaintiff Kawimbe is a Bishop of the African Methodist Episcopal Church (AMEC),

---

[1]    *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 n.1 (11th Cir. 1999) ("At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to

which is the religious denomination associated with the Church.[2] The Church is organized and operated as a non-profit corporation under the laws of the Commonwealth of Pennsylvania and has its principal place of business in Nashville, Tennessee.[3] The Church's governing document, the Book of Discipline, incorporates the laws of Pennsylvania.[4]

Kawimbe was appointed as the Bishop for the 19th Episcopal District of AMEC in 2012 and reappointed in 2016.[5] After his reappointment in 2016, a minister in the 19th District filed an internal complaint against Kawimbe, claiming that Kawimbe had engaged in "private humiliation" in deciding which conference the minister would be appointed to, which determined where in South Africa the minister would be located, and that Kawimbe illegally handled church funds.[6] Kawimbe hired attorneys to defend himself against these allegations. Pursuant to

---

the plaintiff.").

[2] ECF 1, at ¶¶ 1–2.
[3] *Id.* at ¶ 2.
[4] *Id.* at ¶ 16.
[5] *Id.* at ¶ 8.
[6] *Id.* at ¶ 10.

the Church's internal procedures, a two-day trial was held in Atlanta, Georgia, with a jury consisting of Church ministers.[7] The jury found in favor of Kawimbe.

After succeeding on the merits, Kawimbe sought indemnification from the Church for over $75,000 in attorneys' fees and expenses that he incurred in connection with his defense,[8] but the Church refused to indemnify him.[9] Kawimbe then filed suit in this Court, claiming that the Church violated Pennsylvania law, which requires non-profits to indemnify their representatives who successfully defend claims brought against them "by reason of" their representative capacity. 15 Pa. Cons. Stat. § 5743.

The Church moves to dismiss Kawimbe's Complaint for failure to state a claim,[10] arguing, first, that Kawimbe's claims are precluded by the establishment clause of the First Amendment and, specifically, that an employee of a religious institution cannot challenge the institution's employment decisions.[11] Second, the Church argues that the mandatory indemnification statute conflicts with its internal permissive indemnification procedures as dictated in the Book of

---

[7]   *Id.* at ¶ 11.

[8]   *Id.* at ¶¶ 14, 24.

[9]   *Id.* at ¶ 24.

[10]  ECF 11.

[11]  ECF 11-1, at 7–14.

Discipline, and, under Pennsylvania law, the Book of Discipline controls where a conflict with that law exists.[12] Finally, the Church argues that the Pennsylvania indemnification statute is inapplicable because Kawimbe is not a representative of the Church and the internal proceeding was neither a third-party proceeding nor a corporate action.[13] Kawimbe responded to the Church's motion,[14] and the Church replied.[15] The Court held oral argument on the motion to dismiss on June 10, 2021. At the hearing, the Church argued that the Court lacked subject matter jurisdiction over the claims pursuant to the ecclesiastical abstention doctrine.

After the Church moved to dismiss, but before briefing concluded, Kawimbe moved to amend the Complaint to correct the Church's name in the case caption and throughout the Complaint.[16] The Church does not oppose amendment, but filed a response to inform the Court that the amendment does not render its motion to dismiss moot.[17]

---

[12]   *Id.* at 15–16.
[13]   *Id.* at 17–19.
[14]   ECF 19.
[15]   ECF 23.
[16]   ECF 20.
[17]   ECF 22.

## II. LEGAL STANDARD

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may be based on a facial or factual challenge to the complaint. *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (citing *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. May 1981)). A facial attack "requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction," and for purposes of the motion, the allegations in the complaint are taken as true. *Id.* at 1251 (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)) (alterations omitted).

By contrast, a factual attack challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered." *Id.* (quoting *Lawrence*, 919 F.2d at 1529). The Church's challenge is best characterized as a factual challenge as it asks the Court to consider matters outside the four corners of the Complaint: namely, the Church's judicial council's decision denying Kawimbe's request for payment of his attorneys' fees.[18]

---

[18] ECF 11-4.

### B.     Motion to Dismiss for Failure to State a Claim

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint is plausible on its face when a plaintiff pleads sufficient factual content for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A complaint must also present sufficient facts to "'raise a reasonable expectation that discovery will reveal evidence' of the claim." *Am. Dental Ass'n*, 605 F.3d at 1289 (quoting *Twombly*, 550 U.S. at 556). At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). This principle, however, does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678.

### III.     DISCUSSION

#### A.     The Ministerial Exception

The Church's primary argument is that Kawimbe's claims improperly ask the Court to involve itself in church governance in violation of the establishment clause of the First Amendment. In its papers, the Church moved pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[19] It relied primarily on *Hosanna-Tabor Evangelical Lutheran Church & School v. Equal Employment Opportunity Commission*, 565 U.S. 171, 195 (2012), and its progeny for the proposition that religious institutions' employment decisions regarding ministers are strictly ecclesiastical matters, and suits challenging those decisions are improper. This doctrine is referred to as the ministerial exception and operates as an affirmative defense to employment-related claims. *Id.* at 195 n.4.

The Court finds that the ministerial exception does not preclude Kawimbe's claims. Based on the facts alleged in the Complaint, the Church's decision to deny Kawimbe indemnification does not implicate its right to select its ministers. *See Second Episcopal Dist. Afr. Methodist Episcopal Church v. Prioleau*, 49 A.3d 812, 817 (D.C. 2012) (ministerial exception applies when an employee challenges a "church's authority to hire, to fire, or to assign her duties"). As alleged, after a two-

---

19    ECF 11; ECF 11-1, at 5–6.

day internal proceeding, a jury of ministers returned a verdict in favor of Kawimbe.[20] Kawimbe then requested indemnification pursuant to a Pennsylvania statute requiring indemnification for non-profit corporate representatives who succeed on claims against them in their representative capacity.[21] The Church denied the request.[22]

Based on these allegations, the decision to deny Kawimbe indemnification had nothing to do with his employment as a minister, and mandating indemnification would not entangle the Court in the Church's or AMEC's right to hire, fire, or assign duties to Kawimbe. The Church, therefore, has not carried its burden to show that the ministerial exception applies. To the extent a factual inquiry would prove otherwise, such an inquiry is improper at this motion to dismiss stage. *Prioleau*, 49 A.3d at 817 (the record developed at the motion to dismiss stage did not support application of the ministerial exception to a suit alleging a church failed to pay its minister for her services).

---

[20] ECF 1, at ¶¶ 11–12.
[21] *Id.* ¶¶ 22–24.
[22] *Id.* ¶ 25.

B.     **Ecclesiastical Abstention**

The Court finds that the proper framework for the Church's First Amendment argument is the ecclesiastical abstention doctrine, which the Church raised for the first time during oral argument.[23] The Church argues that the Court must abstain from resolving this dispute because it pertains to purely ecclesiastical matters and because the Court must defer to the judicial council's decision to deny Kawimbe indemnification.

> The prohibition on judicial cognizance of ecclesiastical disputes is founded upon both establishment and free exercise clause concerns. By adjudicating religious disputes, civil courts risk affecting associational conduct and thereby chilling the free exercise of religious beliefs. Moreover, by entering into a religious controversy and putting the enforcement power of the state behind a particular religious faction, a civil court risks "establishing" a religion.

*Crowder v. S. Baptist Convention*, 828 F.2d 718, 721 (11th Cir. 1987).

Federal courts are required "to abstain from deciding issues connected to 'theological controversy, church discipline, ecclesiastical government, or

---

[23]  Although the Church failed to raise this argument in its papers, the Court has the authority to *sua sponte* determine subject matter jurisdiction at any point. *Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) (a district court "should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings. Indeed, it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking").

conformity of members of the church to the standard of morals required of them,' and to accept as binding the decisions of religious organizations regarding the governance and discipline of their clergy." *Myhre v. Seventh-Day Adventist Church Reform Movement Am. Union Int'l Missionary Soc'y*, 719 F. App'x 926, 928 (11th Cir. 2018). Abstention is particularly appropriate where "questions of church discipline and the composition of the church hierarchy" are involved because these "are at the core of ecclesiastical concern." *Serbian E. Orthodox Diocese for U.S. of Am. & Canada v. Milivojevich*, 426 U.S. 696, 717 (1976).

Nevertheless, the Supreme Court and the Eleventh Circuit have "rejected an absolute rule that civil courts are powerless to resolve any [religious] property dispute." *Crowder*, 828 F.2d at 721 (citing *Bouldin v. Alexander*, 82 U.S. (15 Wall.) 131 (1872); *Presbyterian Church v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church*, 393 U.S. 440 (1969); and *Jones v. Wolf*, 443 U.S. 595 (1979)). Instead, federal courts are permitted to "apply neutral principals of law" to resolve disputes that do not involve "consideration of doctrinal matters" or church polity. *Myhre*, 719 F. App'x at 928 (quoting *Jones*, 443 U.S. at 602–03). Similarly, deference to authoritative decisions of religious bodies is not compulsory. *Crowder*, 828 F.2d at 726. In applying neutral principals of law to such disputes, a court may examine religious documents, but must be careful to do so on secular terms. *Jones*, 443 U.S. at 604.

Kawimbe asks the Court to decide whether he is legally entitled to indemnification. Under Pennsylvania law, if a representative of a non-profit corporation succeeds on the merits in an action or proceeding brought against him "by reason of" his representative status, the non-profit corporation must indemnify him. 15 Pa. Cons. Stat. § 5743. Kawimbe claims that the Church is required to indemnify him for the cost of his legal representation in the internal proceeding because he succeeded on the merits. The Church does not dispute that Kawimbe succeeded on the merits of the internal proceeding. Therefore, to determine the Church's liability, the Court must decide whether Kawimbe is a representative of the Church and whether the internal proceeding was brought against him "by reason of" his representative status.

The Court concludes that it cannot resolve these questions by applying neutral principles of law. To determine whether Kawimbe is or was a representative of the Church, the Court would be required to scrutinize "the composition of [the Church and AMEC's] hierarchy," including the nature of Kawimbe's role as a bishop, which are matters of "core ecclesiastical concern." *Milivojevich*, 426 U.S. at 717. This inquiry is intertwined with the "by reason of" element of the statute, which requires "a showing of a nexus between an indemnitee's activity and the matter for which indemnification is being sought."

*Am. Soc'y for Testing & Materials v. Corrpro Cos., Inc.*, 478 F.3d 557, 577 (3d Cir. 2007) (applying Pennsylvania law); *see also Bernstein v. TractManager, Inc.*, 953 A.2d 1003, 1011 (Del. Ch. 2007) ("This connection is established if the corporate powers were used or necessary for the commission of the alleged misconduct."). Accordingly, to determine whether the internal proceeding was brought "by reason of" Kawimbe's role as a representative of the Church, the Court would have to consider the responsibilities and powers given to Kawimbe in his role as bishop and whether the accusations against him involved those responsibilities and powers. This inquiry would necessarily entangle the Court in matters of church governance.

*Bennett v. Evangelical Lutheran Church in America, Southern Ohio Synod*, 647 N.E.2d 566, 569 (Ohio App. 1994), cited by Kawimbe, is distinguishable. There, the Ohio appellate court was not required to examine the plaintiff's role in the church because his role was expressly covered by the indemnification provision in the church's governing document. *Id.* The court, therefore, could apply neutral principals of contract interpretation to resolve the dispute.

In sum, Kawimbe requests that the Court impermissibly entangle itself in a dispute "involving . . . church discipline, ecclesiastical government, [and] the conformity of the members of the church to the standard of morals required of

them." *Eglise Baptiste Bethanie De Ft. Lauderdale, Inc. v. Seminole Tribe of Fla.*, 824 F. App'x 680, 683 (11th Cir. 2020), *cert. denied*, 209 L. Ed. 2d 750 (May 17, 2021) (quoting *Crowder*, 828 F.2d at 722). These are "the very types of questions we are commanded to avoid." *Id.* The Court must abstain from this ecclesiastical concern and, accordingly, dismisses Kawimbe's Complaint for want of jurisdiction.

## IV. CONCLUSION

The Church's motion to dismiss [ECF 11] is **GRANTED**. Kawimbe's unopposed motion to amend the complaint [ECF 20] is **DENIED as moot**.

**SO ORDERED** this the 27th day of August 2021.

Steven D. Grimberg
United States District Court Judge